(No. 49612.—
(No. 49629.—
(No. 49630.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. VALLEY STEEL PRODUCTS COMPANY *et al.*, Appellees.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. J. D. BARTER CONSTRUCTION COMPANY *et al.*, Appellees.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. J. D. BARTER CONSTRUCTION COMPANY, Appellee.

*Opinion filed April 3, 1978.—Modified on denial of rehearing May 26, 1978.*

RYAN, J., dissenting.

William J. Scott, Attorney General, of Springfield, and C. Joseph Cavanagh, State's Attorney, of Springfield (Donald B. Mackay and Philip Weber, Assistant Attorneys General, and Wayne Golomb, Assistant State's Attorney, of counsel), for the People.

Robert G. Heckenkamp, of Heckenkamp & Fuiten, of Springfield, and Thomas J. Guilfoil, Jim J. Shoemake, and John W. O'Neil, Jr., of Guilfoil, Symington, Petzall &

Shoemake, of St. Louis, for appellees Valley Steel Products Company and Howard Neuman.

No. 49629.—Appeal from the Circuit Court of Sangamon County, the Hon. George P. Coutrakon, Judge, presiding.

William J. Scott, Attorney General, of Springfield, and C. Joseph Cavanagh, State's Attorney, of Springfield (Donald B. Mackay, Philip Weber, and Gerri Papushkewych, Assistant Attorneys General, of counsel), for the People.

Jenner & Block, of Chicago, and Hendricks & Watt, of Murphysboro (David W. Watt, Jr., of counsel), for appellees J. D. Barter Construction Company, James Guard, and Robert W. Henley.

No. 49630.—Appeal from the Circuit Court of Sangamon County, the Hon. Harvey Beam, Judge, presiding.

William J. Scott, Attorney General, of Springfield (Donald B. Mackay and Philip Weber, Assistant Attorneys General, of counsel), for the People.

Thomas P. Sullivan, Donald R. Harris, Jeffrey D. Colman, Eugene R. Wedoff and Kathleen J. Purcell, of Chicago (Jenner & Block, of counsel), for appellee J. D. Barter Construction Company.

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

In each of these appeals, cause No. 49612, People v. Valley Steel Products Co., and causes No. 49629 and 49630, People v. J. D. Barter Construction Co., the circuit court for Sangamon County dismissed indictments returned by the grand jury on August 27, 1975, which charged the corporate defendants and various individuals with violations of sections of the Motor Fuel Tax Law (Ill.

Rev. Stat. 1975, ch. 120, pars. 417 *et seq.*) (the Act).

In causes No. 49612 and 49629 the circuit court dismissed the indictment for the reason, among others, that the Act violated the equal protection clause of article I, section 2, of the Illinois Constitution. The State took a direct appeal under Rule 302(a)(1) (58 Ill. 2d R. 302(a)(1)). In cause No. 49630, the circuit court upheld the Act on the equal protection issue, but dismissed the indictment on nonconstitutional grounds. The State took an appeal to the appellate court, the appeal was transferred here under Rule 302(b) (58 Ill. 2d R. 302(b)), and the three causes were consolidated for argument and decision.

In cause No. 49612, People v. Valley Steel Products Co., the indictment named both Valley Steel Products Company (Valley Steel) and Howard Neuman, alleged in the indictment to be Valley Steel's comptroller and secretary-treasurer. Various counts of the indictment alleged that Valley Steel was doing business in Illinois as a licensed bulk user of special fuel, and that, over the period from April 1973 through January 1975, the defendants failed to comply with section 5b of the Act (Ill. Rev. Stat. 1975, ch. 120, par. 421b), which requires a monthly return showing the amount of special fuel received or purchased during the preceding month, in that the returns understated these amounts. Other counts charged that Valley Steel was doing business in Illinois, that it was not licensed as either a supplier or a distributor of motor fuel, and that, over the period from July 1972 to January 1975, the defendants had made purchases of motor fuel, but had failed to pay the motor fuel tax to the State, as required by section 7 of the Act (Ill. Rev. Stat. 1975, ch. 120, par. 423).

It was charged in other counts of the indictment that the defendants had distributed motor fuel without a license, in violation of section 3 (Ill. Rev. Stat. 1975, ch. 120, par. 419) of the Act, by transporting motor fuel into

Illinois and distributing it to points located in three named Illinois municipalities.

Valley Steel filed a motion to dismiss all counts of the indictment on the grounds that a corporation is not subject to criminal prosecution for violations of the Act and that the Act violated the equal protection clause of article I, section 2, of the Illinois Constitution, in that the Act designated violations as Class 3 and Class 4 felonies, whereas comparable violations of other statutes imposing use and occupation taxes were punishable only as misdemeanors or business or petty offenses. Valley Steel also moved to dismiss the charges of distributing motor fuel without a license on the ground that the communities in which distribution was allegedly made were located in counties other than the County of Sangamon, so that venue was improper under section 1—6 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 1—6).

The defendant Neuman also filed a motion to dismiss. It paralleled that of Valley Steel on the equal protection and venue issues. Neuman's motion also asserted that the indictment was defective since it did not allege that he was the person responsible for filing tax returns or making payment of any taxes due. In a memorandum opinion accompanying its order of dismissal, the trial court found in favor of the defendants on each of their contentions.

In cause No. 49629, the indictment named as defendants J. D. Barter Construction Company (Barter), James Guard, and Robert W. Henley. Guard was alleged to be the general manager of Barter, and Henley was alleged to be a commission agent for Mobil Oil Corporation. The indictment charged Barter and Guard with violation of sections 5b and 7 of the Act. In addition the indictment charged that the defendant Henley was responsible for reporting to Mobil Oil Corporation the amount of motor fuel tax from the sale of special fuel made to Barter, but that he failed to do so, thereby causing Mobil to fail to collect and pay over

said tax, as required by section 6 (Ill. Rev. Stat. 1975, ch. 120, par. 422).

The trial court's dismissal of the indictment rested on its acceptance of the defendants' contentions as to violation of the equal protection clause and of corporate immunity from prosecution. Certain counts were also dismissed because they failed to allege a mental state or a specific intent as defined by section 4—9 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 4—9).

In cause No. 49630, the indictment, which named Barter alone, charged it with violations of section 13 of the Act (Ill. Rev. Stat. 1975, ch. 120, par. 429) in filing claims for refunds of motor fuel tax payments which falsely stated that the fuel purchased on which the refund was claimed was used for a nontaxable purpose. In this case, which was heard by a different judge, the circuit court rejected the defendant's claim as to the violation of the equal protection clause, but accepted the claim of corporate immunity from prosecution.

We turn first to the contention that the corporate defendants were not amenable to criminal prosecution. The first paragraph of section 15 of the Act (Ill. Rev. Stat. 1975, ch. 120, par. 431) provides that "any person" who acts as a distributor of motor fuel or as a supplier or a bulk user of special fuel without a license, or who fails to make payment of an amount of tax due, commits a criminal offense, and paragraphs 2 and 5 specify as criminal offenses the failure to make a monthly return, and the making of a false report to the Department of Revenue. Thus the actions with which these defendants were charged are all encompassed by section 15. These defendants maintain, however, that section 1.11 of the Act (Ill. Rev. Stat. 1975, ch. 120, par. 417.11) wholly removes them from the operation of section 15. Section 1.11 provides:

" 'Person' means any natural individual, firm, trust,

estate, partnership, association, joint stock company, joint adventure, corporation, or a receiver, trustee, conservator, or other representative appointed by order of any court, or any city, town, county or other political subdivision in this State. *Whenever used in any Section of this Act prescribing and imposing a fine or imprisonment or both, the term 'person' as applied to partnerships and associations shall mean the partners or members thereof, and as applied to corporations the term 'person' shall mean the officers, agents, or employees thereof who are responsible for any violation of this Act.*" (Emphasis added.)

The defendants read the italicized portion of this section not simply as specifying that corporate officers, agents, and employees are among those subject to prosecution, but as excluding the corporation itself from prosecution. This construction of the section would produce the unusual result of placing upon an officer or employee the sole criminal liability for actions concededly performed on behalf of his corporation. We are referred to no other statute, either in the field of taxation or otherwise, in which such an insulation from liability has been created. It is a construction which would effect a discrimination against those distributors operating as sole entrepreneurs rather than as corporations or partnerships.

In considering the Act as a whole, its legislative antecedents, and judicial decisions construing them, we conclude that the defendants' claim of corporate immunity is not well founded.

From its original enactment in 1929 (Smith-Hurd Rev. Stat. 1929, ch. 120, pars. 417 through 434; 1929 Ill. Laws 625) until 1935, the Act contained no definition at all of "person." The Act simply set forth its regulatory requirements, and prescribed the penalties imposed on "whoever" violated them. In 1935 a definition of "person," identical to that which now appears as the first sentence of section 1.11, was added to section 1 (Smith-Hurd Rev. Stat. 1935, ch. 120, par. 417; 1935 Ill. Laws 1184, 1185). It is not

contended here that during this period a violator of the Act was immune from criminal prosecution if the violator was a corporation. *People v. Strong* (1936), 363 Ill. 602, 605; *cf. People ex rel. Kerner v. Blue Rose Oil Co.* (1935), 360 Ill. 397, 403, 405, *cert. denied* (1935), 296 U.S. 605, 80 L. Ed. 429; *People v. McArdle* (1938), 295 Ill. App. 149; Ill. Ann. Stat. 1975, ch. 38, par. 5—4, Committee Comments, at 318-19 (Smith-Hurd 1972); Comment, *Corporate Criminal Liability,* 68 Nw. U.L. Rev. 870, 871-77 (1973).

In two cases decided in 1936 involving the Motor Fuel Tax Law, this court delivered opinions which seemed to cast doubt on the legality of imposing criminal liability on officers and directors of corporations which had violated the Act. In *People v. Strong* (1936), 363 Ill. 602, officers and directors of a distributor were indicted for embezzlement in failing to pay over to the State taxes collected on the distribution of motor fuel. At that time the act of embezzlement charged was punishable only by imprisonment. The court reasoned that the officers and directors could not be indicted as accessories, since accessories cannot be given a punishment greater than their principal, and since the latter, being a corporation, could not be imprisoned. It was therefore held proper to quash the indictment.

The other case was *People v. Duncan* (1936), 363 Ill. 495. Here the defendant was indicted as an accessory before the fact in connection with the failure of the corporation to pay over to the State motor fuel taxes collected, and also on counts that the corporation had done business as a distributor without having a license. The defendant was found guilty and was sentenced to imprisonment on the latter charges. Although the penal provisions of the Motor Fuel Tax Law authorized punishment by either a fine or imprisonment, this court held that the defendant, charged as an accessory, could not be punished

by imprisonment since such a penalty could not be imposed upon his corporate principal. The conviction was accordingly reversed.

In 1937 the General Assembly amended the Act (1937 Ill. Laws 1047). One portion of the amendatory legislation added a second sentence to the definition of "person." That sentence was the same as the second sentence of what is now section 1.11 of the Act, except that the words "and include" preceded the words "the partners" and "the officers."

The 1937 legislation also amended section 15 (Ill. Rev. Stat. 1975, ch. 120, par. 431) by adding, following the enumeration of the penalties imposed for violations of the Act, the following provision:

> "In case such person acting as a distributor is a corporation, then the officer or officers, agent or agents, employee or employees, of such corporation responsible for any act of such corporation, or failure of such corporation to act, which act or failure to act constitutes a violation of any of the provisions of this Act as enumerated above, shall be punished by such fine or imprisonment, or by both such fine and imprisonment as herein above provided."

In the light of the *Strong* and *Duncan* decisions, and the addition of the provision of section 15 quoted above, we conclude that the 1937 modification of the definition of persons subject to criminal prosecution, on which the corporate defendants here rely, was not designed to immunize corporations from criminal liability, but only to insure that responsible officers, directors, and employees should not be free from conviction as accessories to violations of the Act by their corporate principals simply because the latter, in the nature of things, could not be imprisoned.

The 1937 amendment to section 1 of the Act, as previously noted, provided that with respect to criminal liability, a person "shall mean and include" the officers,

agents, or employees responsible for the violation. The term "include" does not necessarily imply the exclusion of items not specifically enumerated. This court discussed the various meanings of the word "include" in *Illinois Central R.R. Co. v. Franklin County* (1944), 387 Ill. 301, 313-18. We pointed out there that the term should not be construed as limiting the application of a law to those items specifically enumerated where such a construction would override the intent of the legislature. (See also *Greyhound Lines, Inc. v. City of Chicago* (1974), 24 Ill. App. 3d 718, 727-28.) As was said in the latter case, "the weight of authority ordinarily interprets 'include' as a term of enlargement." 24 Ill. App. 3d 718, 728.

The defendants point out that in 1961 the words "and include" were deleted from section 1.11 (1961 Ill. Laws 3653, 3655). The third paragraph of section 15, however, which had been broadened in 1963 to include suppliers and bulk users as well as distributors (1963 Ill. Laws 1557, 1569-70), was left intact. We are not persuaded that in removing the words "and include" from section 1.11 the legislature intended to effect so major a change in the law as the abolition of corporate criminal liability.

We consider next the contention that the Act violates the equal protection clause of the Illinois Constitution because violations of the Act are designated felonies, whereas, the defendants maintain, corresponding violations of other statutes imposing taxes are punished as no more than misdemeanors.

We first observe that the statutory citations which appear in defendants' briefs fall short of demonstrating the systematic discrimination which the defendants say exists. Thus, for example, the penalty for the first offense of failing to file a return under the Motor Fuel Tax Law is a Class B misdemeanor only (Ill. Rev. Stat. 1975, ch. 120, par. 431(2)), the same penalty which, according to defendants, is imposed under the Retailers' Occupation

Tax Act. In the view we take of the defendants' equal protection claim, however, it is not necessary to enter upon a detailed comparison of the various revenue statutes of this State.

The statute here does not involve any "suspect" type of classification, nor is it one which touches upon fundamental constitutional rights as these have been described by the decisions of this court and of the United States Supreme Court. It therefore need not be subjected to close scrutiny, and no more is required than that it have a rational basis. (*People ex rel. Tucker v. Kotsos* (1977), 68 Ill. 2d 88, 97-98; Note, *A Question of Balance: Statutory Classifications under the Equal Protection Clause,* 26 Stan. L. Rev. 155 (1973).) The words of this court in *Jacobs v. City of Chicago* (1973), 53 Ill. 2d 421, 425, are pertinent:

> "The powers of a legislative body to make classifications, particularly in the field of taxation, are very broad and the classifications must be upheld if any state of facts reasonably can be conceived that would sustain them. (*Thorpe v. Mahin,* 43 Ill. 2d 36, 45; *Midwest Freight Forwarding Co., Inc. v. Lewis,* 49 Ill. 2d 441, 445.) Furthermore, there is a presumption in favor of the validity of the classification made by the legislative body and one who assails it has the burden of proving the classification to be arbitrary."

In the customary challenge to legislation under the equal protection clause, a defendant contends that he is discriminated against in favor of other persons subject to the same tax. (See, *e.g., Titus v. Texas Co.* (1973), 55 Ill. 2d 437; *Williams v. City of Chicago* (1977), 66 Ill. 2d 423.) The defendants' challenge here is far broader; it is that the statutory penalty imposed under the Motor Fuel Tax Law cannot exceed that imposed in connection with other

taxes, including the retailers' occupation tax, the State income tax, the service occupation tax, the cigarette use tax, and, in principle, any tax whatever. Defendants could as well urge that the amount of the fine, the period of imprisonment, and even the rate and incidence of this tax must be identical with those of other statutes imposing taxes. Such an "iron rule" of uniformity has been rejected. *Sherman-Reynolds, Inc. v. Mahin* (1970), 47 Ill. 2d 323, 329-30.

We do not believe that the demands of equal protection require this court to supplant the General Assembly and to take over what is essentially a legislative responsibility for determining what shall be an offense and what its punishment shall be. See *People v. Burnett* (1946), 394 Ill. 420, 425-26; *People ex rel. Kubala v. Kinney* (1962), 25 Ill. 2d 491, 492-93; *People v. Williams* (1977), 66 Ill. 2d 179, 186.

The defendants rely principally on *People v. McCabe* (1971), 49 Ill. 2d 338. In that case this court held that to include marijuana in the Uniform Narcotic Drug Act (Ill. Rev. Stat. 1969, ch. 38, pars. 22—1 to 22—49.1), with its substantially harsher penalties, rather than in the Drug Abuse Control Act (Ill. Rev. Stat. 1969, ch. 111½, pars. 801 through 812), was a constitutionally invalid classification. The decision rested on the court's conclusion that the chemical properties and effects of marijuana did not provide a rational basis for the difference in penalties imposed under the two acts, but that, on the contrary, marijuana could more appropriately be grouped with the other drugs included under the Drug Abuse Control Act. (49 Ill. 2d 338, 347-49; *cf.* 66 Nw. U.L. Rev. 829 (1971).) *McCabe* struck down a classification within the general area of drugs. There is obviously no "class" of all taxpayers; *McCabe* has no pertinence here.

Certain counts of the indictment in cause No. 49612 charged that Valley Steel had acted as a distributor of

motor fuel without a license by transporting such fuel into the State and delivering it into storage tanks located in three municipalities located elsewhere than in the County of Sangamon. Section 1—6 of the Criminal Code of 1961 provides that criminal actions shall generally be tried "in the county where the offense was committed." (Ill. Rev. Stat. 1975, ch. 38, par. 1—6.) There is nothing in the indictment alleging that any distribution took place in the County of Sangamon. Contrary to the State's suggestion, it is the act of engaging in distribution without a license rather than the failure to obtain a license which constitutes the offense under section 3 of the Act (Ill. Rev. Stat. 1975, ch. 120, par. 419). We accordingly affirm the judgment of the trial court insofar as it dismissed those counts alleging a violation of section 3.

Defendant Neuman argues that the counts charging him with a failure to file tax returns and to collect and pay the tax are defective as to him since they do not charge that he was the person responsible for performing those acts. It is readily apparent that the indictment did not charge Neuman with himself acting as a distributor, and thus liable to file returns on his own account, but that he was charged in his capacity as comptroller and secretary-treasurer of Valley Steel. While it will be incumbent upon the State to prove that Neuman did in fact have those responsibilities, we consider that that is a matter which goes to the sufficiency of the evidence, not to that of the indictment. It is of course unnecessary for an indictment to plead matters of evidence so long as the indictment sufficiently advises the defendant of the nature of the accusation so that he may prepare for his defense and will be able to plead the judgment in bar of subsequent prosecution. (See *People v. Grieco* (1970), 44 Ill. 2d 407, 408-10.) The same principle disposes of the claim that the indictment was deficient in failing to allege the amount of fuel that should have been reported or the amount of tax

that was due. These are plainly matters of evidence. *People v. Meaderds* (1961), 21 Ill. 2d 145.

What has already been stated in this opinion disposes of the issues arising on these appeals, except for a contention made in cause No. 49629 that certain counts of the indictment are defective in failing to allege the mental state with which the offenses charged were committed. The counts involved are those which charge Barter, Guard, and Henley with filing false reports which understated the amount of special fuel purchased contrary to the requirement of section 5b, those which charge Barter with failure to pay taxes on motor fuel purchased, as required by section 7, and those charging Henley with failure to report to Mobil Oil Corporation the amount of tax due on sales of special fuel made to Barter, thereby causing Mobil to fail to collect and pay over the tax as required by section 6. Under section 15 of the Act the filing of a false report is made a Class 3 felony. Those counts of the indictment relating to that charge allege, however, that the understating of fuel purchased was done "knowingly." Section 15 of the Act also provides that the failure to pay taxes due shall be a Class 4 felony.

The State, relying on *People v. Player* (1941), 377 Ill. 417, argues that the offenses charged are ones involving absolute liability under sections 4–3 and 4–9 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, pars. 4–3, 4–9), and therefore that no allegation of mental state is necessary. In *People v. Player,* while there is broad language that the statute in question made the failure to file a return criminal without proof of intent or knowledge, the defendant was convicted of failure to make monthly returns prescribed by section 3 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1939, ch. 120, par. 442). Section 13 of that act (Ill. Rev. Stat. 1939, ch. 120, par. 452) made the failure to file a return a misdemeanor, and the defendant was sentenced to pay a fine of $1,000

and to serve 90 days in jail.

Under sections 5—8—1 and 5—9—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, pars. 1005—8—1, 1005—9—1), conviction of a Class 3 felony permits imprisonment for not over 20 years, and a fine of not over $10,000. For a Class 4 felony, imprisonment for not over 3 years and a fine of not over $10,000 are permitted. (Ill. Rev. Stat. 1975, ch. 38, pars. 1005—8—1, 1005—9—1.) Section 4—9 of the Criminal Code of 1961 provides that a person may be guilty of an offense without having, as to each element thereof, one of the mental states described in sections 4—4 through 4—7 if the offense is a misdemeanor which is not punishable by incarceration or by a fine exceeding $500, or the statute defining the intent clearly indicates a legislative purpose to impose absolute liability for the conduct described. Ill. Rev. Stat. 1975, ch. 38, par. 4—9.

While the Motor Fuel Tax Law is not part of the Criminal Code of 1961, section 4—9 of the Code is applicable to the penalty provisions involved here. We consider that the sections of the Act defining offenses punishable as felonies should not be construed, by virtue of section 4—9, to impose an absolute liability, since they do not "clearly indicate" a purpose to do so. The mere absence of express language describing a mental state does not *per se* lead to the conclusion that none is required. See *Morissette v. United States* (1952), 342 U.S. 246, 263, 96 L. Ed. 288, 300, 72 S. Ct. 240, 250. See also the final paragraph of the committee comments to section 4—9, where it is stated:

> "In addition to permitting a construction requiring absolute liability in offenses [not] punishable by incarceration or by a fine of not more than $500, the second part of section 4—9 expresses the policy that in other offenses not including a mental state in the definition only a clearly indicated legislative intent to create absolute liability should be recognized, and in all other instances, a

mental-state requirement should be implied as an applica-
tion of the general rule that an offense consists of an act
accompanied by a culpable mental state, as expressed in
Section 4—3." Ill. Ann. Stat., ch. 38, par. 4—9, Com-
mittee Comments, at 283 (Smith-Hurd 1972).

Also, and importantly, in looking to the question of
intent under the Act, it cannot be reasonably said that the
legislature, when it provided for penalties as high as 20
years' imprisonment and fines as great as $10,000,
intended the offenses it was creating to be absolute-
liability offenses. It would be unthinkable to subject a
person to a long term of imprisonment for an offense he
might commit unknowingly. See *Morissette v. United
States* (1952), 342 U.S. 246, 256, 260-61, 270-71, 96 L.
Ed. 288, 296-97, 299, 304-05, 72 S. Ct. 240, 246, 248,
253-54.

The defendants state that if the penalty provisions
involved here do not impose absolute liability then they
must be read as incorporating a mental state requirement
as prescribed by section 4—3(a) of the Criminal Code of
1961. From this it follows, they contend, that the
indictments fail to comply with section 111—3 of the
Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975,
ch. 38, par. 111—3), which requires, "(a) A charge shall
*** allege the commission of an offense by: *** (3)
Setting forth the nature and elements of the offense
charged; ***." (*Cf. People v. Edge* (1950), 406 Ill. 490,
493-94; *People v. Harris* (1946), 394 Ill. 325, 327-28.) We
agree.

It follows that, for the reasons given above, the
judgment of the circuit court in cause No. 49612 is
affirmed insofar as it dismissed on the ground of improper
venue the charges of acting as a distributor without a
license, and the judgment of the circuit court in cause No.
49629 is affirmed insofar as it dismissed the charges that
Barter failed to pay taxes on motor fuel purchased and

that Henley failed to report the amount of tax due on sales to Barter. In all other respects the judgment in cause No. 49612 and the judgments in causes No. 49629 and 49630 are reversed and the causes are remanded.

> *49612 — Affirmed in part and reversed in part and remanded.*
> *49629 — Affirmed in part and reversed in part and remanded.*
> *49630 — Reversed and remanded.*

MR. JUSTICE RYAN, dissenting:

In my opinion, the legislative history of the Act indicates that its present provisions were designed to hold individuals, not corporations, criminally liable for violations. As the majority notes, in 1935, "person" under the Act was defined as "any natural individual, firm, trust, estate, partnership, association, joint stock company, joint adventure, corporation, or a receiver, trustee, conservator, or other representative appointed by order of any court, or any city, town, county or other political subdivision of this State." (Smith-Hurd Rev. Stat. 1935, ch. 120, par. 417; 1935 Ill. Laws 1184, 1185.) After this court refused to hold officers and directors liable as accessories for motor fuel tax violations, in *People v. Strong* (1936), 363 Ill. 602, and *People v. Duncan* (1936), 363 Ill. 495, the legislature, in 1937, amended section 1 of the Act to specifically include within the definition of "person" the officers, agents and employees of a corporation. The amendment was made by adding another sentence to the 1935 definition of "person" set out above. The added sentence read:

> "Whenever used in any section of this act prescribing and imposing a fine or imprisonment or both, *** as applied to corporations the term 'person' *shall mean and include* the officers, agents, or employees thereof who are responsible for any violation of this act." (Emphasis

added.) Ill. Rev. Stat. 1937, ch. 120, par. 417; 1937 Ill. Laws 1047, 1048.

The italicized language above implies that the corporation, as well as individuals, could be criminally liable for violations. However, as the majority opinion notes, the legislature, in 1937, also amended section 15 of the Act (the penalty section). The addition provided that in the event the distributor violating the Act is a corporation, *"then* the officer or officers, agent or agents, employee or employees, of such corporation responsible for any act of such corporation, or failure of such corporation to act, which act or failure to act constitutes a violation of any of the provisions of this Act \*\*\*, shall be punished \*\*\*." (Emphasis added.) (Ill. Rev. Stat. 1937, ch. 120, par. 431; 1937 Ill. Laws 1047, 1049.) These two amendments appear to be somewhat inconsistent; one indicates the corporation *and* individuals are liable, whereas the other only imposes penalties on individuals at fault when the distributor is a corporation.

In 1961, the legislature changed the definition of person in section 1.11 to its present form. In relevant part, it now states:

"[A]s applied to corporations the term 'person' *shall mean* the officers, agents, or employees thereof who are responsible for any violation of this Act." (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 120, par. 417.11.)

In my opinion, the words "and include," which followed the words "shall mean" in the 1937 amendment, were specifically deleted by the legislature in order to resolve the apparent inconsistency of the 1937 amendments. This deletion harmonizes section 1.11 with section 15 by excluding corporations from penalties and penalizing only the individuals responsible for the violations. I believe that a proper reading of the Act indicates that criminal penalties should only be imposed on the individuals responsible for the defalcation, not on the corporation.

I hasten to point out that under this construction a corporation would not be completely absolved from liability. In the event that an erroneous return was filed or the proper tax was not paid, the corporation would still be liable for the tax plus substantial civil penalties under sections 4 and 5 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1975, ch. 120, pars. 443, 444), as made applicable to the Motor Fuel Tax Law by section 21 thereof (Ill. Rev. Stat. 1975, ch. 120, par. 434a). The fact that a dishonest, careless or incompetent officer or employee fails or refuses to pay the tax is certainly no reason to penalize the shareholders by imposing heavy criminal sanctions on the corporation, when it has derived no benefit from the violation. Thus, it appears logical to impose criminal sanctions only against the individual who is directly responsible for the violation.