(No. 67785.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. LEOTA L. SEVILLA, Appellee.

*Opinion filed September 27, 1989.—Rehearing denied December 4, 1989.*

114

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Terence M. Madsen and Michael J. Singer, Assistant Attorneys General, of Chicago, of counsel), for the People.

Harvey M. Silets and Daniel T. Hartnett, of Silets & Martin, Ltd., of Chicago, for appellee.

CHIEF JUSTICE MORAN delivered the opinion of the court:

The defendant, Leota L. Sevilla, was indicted by a grand jury in Cook County for knowingly failing to file a retailers' occupation tax return for January 1985 where the amount due was $300 or more, and for knowingly failing to remit the concomitant tax payment. Each charge was brought pursuant to section 13 of the Retailers' Occupation Tax Act (Act) (Ill. Rev. Stat. 1985, ch. 120, par. 452). The indictment charged the defendant with knowingly failing to act, even though the statute did not indicate that the offense included a mental state element.

At trial, the defendant sought to raise a mistake of law defense, which she contends would have negated the existence of the mental state element (see Ill. Rev. Stat. 1985, ch. 38, par. 4—8(a)). The circuit court, holding that her mistake of law defense was not grounded in fact or law, did not allow the defendant the opportunity to introduce evidence in support of that defense. A jury found the defendant guilty of knowingly failing to file the return where the amount due was under $300, and for knowingly failing to remit the concomitant tax pay-

ment, both of which constituted the lesser included offenses of those charged in the indictment. As each offense fell under the same section of the Act, the circuit court entered judgment only on the offense of knowingly failing to file the return. After a sentencing hearing in which the parties introduced evidence in aggravation and mitigation, the circuit court sentenced the defendant to a 14-month term of imprisonment. The defendant appealed.

The appellate court reversed and remanded the cause for a new trial (174 Ill. App. 3d 1090). The appellate court held that the offense of failing to file a retailers' occupation tax return includes a mental state element. The appellate court further held, without discussing the merits of the mistake of law defense, that "[t]he defendant should have been provided with an opportunity to present evidence relating to knowledge and intent" (174 Ill. App. 3d at 1092-93). We granted the State's petition for leave to appeal (107 Ill. 2d R. 315).

At issue is whether the offense of failing to file a retailers' occupation tax return includes a mental state element. If so, it must be determined: (1) whether "knowledge" is the mental state element implied under the Act; and (2) whether the circuit court erred in denying the defendant the opportunity to introduce evidence in support of her mistake of law defense.

The following facts were adduced at the defendant's trial. The defendant was the sole proprietor of a retail business known as "Lee's Creative Designs." In January 1985, the defendant collected retailers' occupation taxes in an amount under $300. The defendant failed to file the monthly return and failed to remit the tax payment by February 28, 1985, the date the return and tax were due.

The State, in order to prove common motive, design and scheme, established that the defendant failed to file

monthly returns and failed to remit tax payments between October 1984 and April 1985. The defendant admitted that she knew of her duty to file the monthly returns and knew that she failed to do so, but claimed that her business was suffering financial hardship during the period in dispute. The defendant also admitted that she knew she was subject to civil penalties, but claimed that she did not know she was also subject to criminal sanctions.

I

The first issue to be addressed is whether the offense of failing to file a retailers' occupation tax return includes a mental state element. In *People v. Player* (1941), 377 Ill. 417, 422, the court, addressing the identical issue, held that the offense of failing to file a return did not include a mental state element. The State argues that *Player* is still controlling; therefore, the language in the indictment charging the defendant with "knowingly" failing to file the return was mere surplusage. The defendant argues that *Player* is no longer controlling because the legislature has made certain amendments to the Act which affect the holding of that case. We agree with the defendant.

The purpose of the Act is to levy a tax on the retailer for the privilege of operating a business in the State. (*Reif v. Barrett* (1933), 355 Ill. 104, 109.) Section 3 of the Act imposes a duty on the retailer to file a retailers' occupation tax return and to remit the tax payment. (Ill. Rev. Stat. 1985, ch. 120, par. 442.) To ensure compliance the Act contains a detailed registration and enforcement scheme. (See Ill. Rev. Stat. 1985, ch. 120, pars. 440 through 451.) Section 13 of the Act makes the failure to file a return, among other things, a criminal offense. (Ill. Rev. Stat. 1985, ch. 120, par. 452.) Section 13 provides in pertinent part:

"When the amount due is under $300, any person engaged in the business of selling tangible personal property at retail in this State who *fails to file a return,* or who files a fraudulent return, or any officer or agent of a corporation engaged in the business of selling tangible personal property at retail in this State who signs a fraudulent return filed on behalf of such corporation, or any accountant or other agent who knowingly enters false information on the return of any taxpayer under this Act, *is guilty of a Class 4 felony."* (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 120, par. 452.)

The section does not indicate whether mental state is an element of the offense of failing to file a return; the words "knowingly" and "fraudulent" as used in this section do not refer to the alleged violation.

Section 4—9 of the Criminal Code of 1961, which became effective January 1962, governs absolute liability. The section provides:

"A person may be guilty of an offense without having, as to each element thereof, one of the mental states described in Sections 4—4 through 4—7 if the offense is a misdemeanor which is not punishable by incarceration or by a fine exceeding $500, or *the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described."* (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 38, par. 4—9.)

This section applies to all criminal penalty provisions, including those outside of the Criminal Code of 1961. *People v. Valley Steel Products Co.* (1978), 71 Ill. 2d 408, 424.

As the failure to file a return under section 13 of the Act is not a misdemeanor offense, the underlying question is one of statutory interpretation: whether the section indicates a clear legislative purpose to impose absolute liability. Because the section does not expressly state whether absolute liability will or will not apply, we must look to sources beyond the statutory language to ascer-

tain the intent of the legislature. We therefore consider "the reason and necessity for the law, the evils sought to be remedied, and the purpose to be achieved." *Stewart v. Industrial Comm'n* (1987), 115 Ill. 2d 337, 341.

The committee comments to section 4—9 reveal that the legislature intended to limit the scope of absolute liability. The comments provide in pertinent part:

"This section is intended to establish, as an expression of general legislative intent, *rather strict limitations upon the interpretation that mental state is not an element of an offense,* although the express language of the provision defining the offense fails to describe such an element. \*\*\*

\* \* \*

The first part of section 4—9 recognizes the type of offense which carries so little culpability that incarceration is not a part of the penalty, and the fine is less than $500. \*\*\* In view of the difficulty of enforcing such provisions if mental state must be proved in each instance, the assumption seems proper that in these instances the omission of such a requirement is intended to create absolute liability. \*\*\*

.\*\*\* [T]he second part of section 4—9 expresses the policy that *in other offenses not including a mental state in the definition only a clearly indicated legislative intent to create absolute liability should be recognized, and in all other instances, a mental-state requirement should be implied as an application of the general rule that an offense consists of an act accompanied by a culpable mental state* \*\*\*." (Emphasis added.) Ill. Ann. Stat., ch. 38, par. 4—9, Committee Comments, at 226-28 (Smith-Hurd 1989).

Moreover, the committee comments reveal that the legislature intended restrictive construction of statutory provisions which are silent as to mental state. The comments provide in pertinent part:

"Section 4—9 represents only a partial solution of the problem—a general restrictive rule of interpretation. An-

other part of the solution is in the rephrasing of the Code provisions which define the specific offenses, to indicate clearly the intended mental-state elements, and the offenses in which mental state, for some cogent policy reason, is not an element." Ill. Ann. Stat., ch. 38, par. 4—9, Committee Comments, at 228 (Smith-Hurd 1989).

Absent either a clear indication that the legislature intended to impose absolute liability or an important public policy favoring it, this court has been unwilling to interpret a statute as creating an absolute liability offense. See *People v. Valley Steel Products Co.* (1978), 71 Ill. 2d 408, 423-24 (certain offenses involving filing requirements under the Motor Fuel Tax Law include a mental state element); *People v. Nunn* (1979), 77 Ill. 2d 243, 249-251 (offense of leaving the scene of an accident includes knowledge of the accident as an element); *People v. Whitlow* (1982), 89 Ill. 2d 322, 332-33 (certain offenses involving securities law include a *scienter* element).

As noted previously, the court in *Player* held that the offense of failing to file a retailers' occupation tax return did not include a mental state element. (*People v. Player* (1941), 377 Ill. 417, 422.) However, the legislature has made two substantive amendments to the Act which affect the continuing validity of *Player*.

The first amendment occurred in 1978, when the legislature added a paragraph to the section of the Act pertaining to civil penalties for failing to file a return. (Ill. Rev. Stat. 1979, ch. 120, par. 444.) The legislature has further amended the section, which currently provides:

"[W]here the failure to file any tax return required under this Act on the date prescribed therefor (including any extensions thereof), is shown to be unintentional and nonfraudulent and has not occurred in the 2 years immediately preceding the failure to file on the prescribed date or is due to other reasonable cause the penalties imposed

by this Act shall not apply." (Ill. Rev. Stat. 1987, ch. 120, par. 444.)

During the legislative debates, Senator Graham offered severe weather and sickness as examples of reasonable cause for late filing, and emphasized that this provision was not intended to relieve from liability retailers who habitually file late. (80th Ill. Gen. Assem., Senate Proceedings, June 20, 1978, at 66.) Likewise, Representative Friedland cited the death of a bookkeeper and post office holidays as examples of reasonable cause for late filing, and stressed that this provision was intended to apply to retailers who file approximately one day late. (80th Ill. Gen. Assem., House Proceedings, May 10, 1978, at 3-4.) The legislature therefore enacted this provision with the purpose of relieving retailers of civil penalties for unintentional, technical violations of the Act.

Section 13 does not contain a parallel provision which would relieve retailers of criminal sanctions for unintentional, technical violations of the Act. This disparity could lead to harsh and absurd results if we were to hold that the offense of failing to file a return is one of absolute liability. For example, it is conceivable that a retailer who is relieved of civil penalties for a technical violation of the Act could still be subject to criminal sanctions. In its brief before this court, the State maintains that prosecutorial discretion would prevent it from bringing charges against a retailer under such circumstances. Nevertheless, during oral arguments before this court, the State admitted that a retailer could be subject to criminal sanctions for a technical violation of the Act. On the other hand, this disparity would not exist if we were to hold that the offense of failing to file a return includes a mental state element. For example, it is likely that a retailer who is relieved of civil penalties for a technical violation would not be subject to criminal sanctions, because the retailer would not intentionally or

knowingly fail to file the monthly return. It is unreasonable to conclude that the legislature intended to relieve a retailer of liability under the civil section of the Act, but still hold the same retailer absolutely liable under the criminal section.

The second amendment occurred in 1984, when the legislature revised the penalty provisions of section 13. When *Player* was decided, the failure to file a return was a misdemeanor offense, punishable by imprisonment not to exceed six months and/or a fine not to exceed $5,000. (Ill. Rev. Stat. 1939, ch. 120, par. 452.) The legislature has elevated the offense to a felony: the failure to file a return in an amount under $300 is a Class 4 felony, punishable by imprisonment not to exceed three years and/or a fine not to exceed $10,000 (Ill. Rev. Stat. 1985, ch. 38, pars. 1005—8—1(a)(7), 1005—9—1(a)(1)); and the failure to file a return in an amount of $300 or more is a Class 3 felony, punishable by imprisonment not to exceed five years and/or a fine not to exceed $10,000 (Ill. Rev. Stat. 1985, ch. 38, pars. 1005—8—1(a)(6), 1005—9—1(a)(1)).

The degree of punishment is a significant factor to consider in determining whether a statute creates an absolute liability offense. (*People v. Nunn* (1979), 77 Ill. 2d 243, 249.) With the exception of those offenses in which public policy favors absolute liability, it would be unjust to subject a person to a severe penalty for an offense that might be committed without fault. (*Morissette v. United States* (1952), 342 U.S. 246, 256, 260-61, 270-71, 96 L. Ed. 288, 296-97, 298-99, 304-05, 72 S. Ct. 240, 246, 248-49, 253-54.) Therefore, where the punishment is great, it is less likely that the legislature intended to create an absolute liability offense. (*People v. Whitlow* (1982), 89 Ill. 2d 322, 333; *People v. Valley Steel Products Co.* (1978), 71 Ill. 2d 408, 425.) It stands to reason that when the legislature increased the penalty provi-

sions from a misdemeanor to a felony, the legislature intended to include mental state as an element of the offense.

As a result of these amendments, when read in conjunction with section 4—9 of the Criminal Code, the principle set forth in *Player* that the offense of failing to file a retailers' occupation tax return was one of absolute liability is no longer viable. Accordingly, we hold that the offense includes a mental state element. The section does not indicate a clear legislative purpose for imposing absolute liability and there is not an important public policy which favors absolute liability, especially in light of the civil penalty provisions available to the Department of Revenue as a means of collecting unpaid and overdue taxes.

## II

As we have concluded that the offense of failing to file a retailers' occupation tax return includes a mental state element, we must address the remaining questions: whether "knowledge" is the mental state element implied under the Act and whether the circuit court erred in denying the defendant the opportunity to introduce evidence in support of her mistake of law defense.

## A

Where a statute neither prescribes a particular mental state nor creates an absolute liability offense, then either intent, knowledge or recklessness applies. (Ill. Rev. Stat. 1985, ch. 38, par. 4—3(b).) Both the State and the defendant maintain that if the statute in the present case does not create an absolute liability offense, knowledge is the mental state element implied under the Act. We agree.

In determining which mental state element is implied under the Act, we find it instructive to examine the lan-

guage of the statute, as well as the language of any parallel statute. See *People v. Boykin* (1983), 94 Ill. 2d 138, 141 (in determining legislative intent, courts first consider statutory language); *People v. Nunn* (1979), 77 Ill. 2d 243, 251-52 (in determining that knowledge was an element of the offense of leaving the scene of an accident, the court was guided by the language of similar statutes of our sister States); *People v. Whitlow* (1982), 89 Ill. 2d 322, 333-34 (in determining that *scienter* was an element of certain offenses involving securities law, the court was guided by the language of a parallel Federal statute).

The language of section 13, which establishes criminal sanctions for violations of the Act, compels a finding that the legislature intended knowledge to be the requisite mental state element. With the exception of those violations involving fraudulent acts, the section designates the mental state accompanying the particular criminal act as either willfulness or knowledge. Conduct performed willfully is performed knowingly or with knowledge. (Ill. Rev. Stat. 1985, ch. 38, par. 4—5.) The section does not designate intent or recklessness as the mental state accompanying any criminal act. Further support for this finding comes from the language of the parallel provision of the Illinois Income Tax Act (Ill. Rev. Stat. 1985, ch. 120, par. 13—1301), which establishes criminal sanctions for failing to file an income tax return. The section provides in pertinent part:

> "Any person *** who *willfully* fails to file a return *** [is] guilty of a Class 4 felony for the first offense and a Class 3 felony for each subsequent offense." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 120, par. 13—1301.)

In light of the language of section 13 of the Act and the language of the parallel section of the Income Tax Act, we hold that knowledge is an element of the offense of failing to file a retailers' occupation tax return.

## B

Knowledge generally refers to an awareness of the existence of the facts which make an individual's conduct unlawful. (21 Am. Jur. 2d *Criminal Law* §136 (1981).) Section 4—5 of the Criminal Code defines knowledge:

"A person knows, or acts knowingly or with knowledge of:

(a) The nature or attendant circumstances of his conduct, described by the statute defining the offense, when he is consciously aware that his conduct is of such nature or that such circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that such fact exists.

(b) The result of his conduct, described by the statute defining the offense, when he is consciously aware that such result is practically certain to be caused by his conduct." Ill. Rev. Stat. 1985, ch. 38, par. 4—5.

The indictment charged the defendant with knowingly failing to file a monthly return. At trial, the State introduced evidence tending to prove that the defendant had knowledge of the circumstances surrounding her failure to file the return. The defendant sought to raise a mistake of law defense, but the circuit court did not allow the defendant the opportunity to introduce evidence in support of that defense. At the close of the evidence, a jury found the defendant guilty of knowingly failing to file the monthly return.

The defendant's mistake of law defense can be summarized as follows. The defendant contends that she was suffering financial hardship during January and February of 1985; therefore, she was unable to file the return and unable to remit the tax payment by February 28, 1985, the date the return and tax were due. The defendant further contends that she studied the tax return form, which allegedly provided that a retailer who fails to file the monthly return and fails to remit the tax pay-

ment by the due date is subject to monetary penalties. The defendant argues that, in reliance upon the language of the tax return form, she reasonably, albeit mistakenly, believed that she would be subject only to civil penalties and not to criminal sanctions. The State argues that the circuit court properly excluded this evidence because it does not support a valid mistake of law defense. The defendant argues that she should have been allowed the opportunity to introduce this evidence because it would have negated the existence of the mental state element of the offense. We agree with the State.

Section 4—8 of the Criminal Code codifies the mistake of law defense. (Ill. Rev. Stat. 1985, ch. 38, par. 4—8.) The section provides in pertinent part:

> "A person's ignorance or mistake as to a matter of either fact or law, *except as provided in Section 4—3(c) above*, is a defense if it negatives the existence of the mental state which the statute prescribes with respect to an element of the offense." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 38, par. 4—8(a).)

Section 4—3(c) of the Criminal Code provides:

> "Knowledge that certain conduct constitutes an offense, or knowledge of the existence, meaning, or application of the statute defining an offense, is not an element of the offense unless the statute clearly defines it as such." (Ill. Rev. Stat. 1985, ch. 38, par. 4—3(c).)

Therefore, a mistake as to a matter of law which negates the existence of the mental state element of the offense is a defense; however, a mistake as to whether certain conduct constitutes an offense is not a defense.

The defendant's alleged defense falls squarely under section 4—3(c) of the Criminal Code. In her brief before this court, the defendant concedes that she was aware of all the facts surrounding the offense, and she even concedes that she was aware of her duty to file the monthly return and of her failure to do so. The defendant con-

tends, however, that although she knew she would be subject to civil penalties, she did not know her conduct constituted a criminal offense. Even if the defendant did not know that her conduct was violative of the law, the course of conduct she selected resulted in a violation of section 13 of the Act, and the fact that she intended to abide by the law will not relieve her from criminal liability. Section 5 of the Act expressly provides that any civil penalties imposed do not bar criminal prosecutions (Ill. Rev. Stat. 1985, ch. 120, par. 444), and the tax return form which the defendant sought to introduce into evidence did not provide that any monetary penalties assessed for late filing were in lieu of criminal sanctions. A principle embedded deeply in our system of jurisprudence is that one's ignorance of the law does not excuse unlawful conduct. (*People v. Cohn* (1934), 358 Ill. 326, 331.) The defendant's argument is therefore without merit.

Nevertheless, the defendant maintains that, in reliance upon the language of the tax return form, she reasonably believed that she would be subject only to civil penalties, not to criminal sanctions. Section 4—8(b) of the Criminal Code lists four exceptions to the general rule that one's ignorance of the law does not excuse unlawful conduct. (Ill. Rev. Stat. 1985, ch. 38, par. 4—8(b).) The section provides that one's reasonable belief that certain conduct does not constitute a criminal offense is a defense if:

"(1) The offense is defined by an administrative regulation or order which is not known to him and has not been published or otherwise made reasonably available to him, and he could not have acquired such knowledge by the exercise of due diligence pursuant to facts known to him; or

(2) He acts in reliance upon a statute which later is determined to be invalid; or

(3) He acts in reliance upon an order or opinion of an Illinois Appellate or Supreme Court, or a United States appellate court later overruled or reversed; [or]

(4) He acts in reliance upon an official interpretation of the statute, regulation or order defining the offense, made by a public officer or agency legally authorized to interpret such statute." (Ill. Rev. Stat. 1985, ch. 38, par. 4—8(b).)

The defendant's belief that her conduct did not constitute a criminal offense does not fall within any of these exceptions. Accordingly, the circuit court did not err in denying the defendant the opportunity to introduce evidence in support of her mistake of law defense.

For the reasons stated above, the judgment of the appellate court, reversing the judgment of the circuit court and remanding the cause for a new trial, is reversed, and the judgment of the circuit court of Cook County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*